■ KATHERINE NOTO, Respondent, et al., Intervenor, v BED-FORD APARTMENTS COMPANY, Appellant. [801 NYS2d 21]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered on or about October 5, 2004, which, to the extent appealed from as limited by the briefs, denied defendant's motion to dismiss the complaint pursuant to CPLR 3211 (a) (5) and/or (7), unanimously reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

Defendant Bedford Apartments Company (landlord) is the owner of an apartment building at 168 West 86th Street. In 1976, plaintiff-intervenor William Wachtel moved into apartment 15C, a rent stabilized, 10-room apartment in the subject premises. In June 1991, plaintiff Katherine Noto, Wachtel's wife, obtained the landlord's permission to rent apartment 15B, an adjacent rent stabilized 10-room apartment, and to remove a common wall in order to combine the two into one large apartment. Tenants spent $1,000,000 in renovations converting apartment 15B into a master bedroom suite with a master bath, dressing rooms, a second bedroom, and an exercise room. After renovations, the combined apartment had only one entrance and one kitchen. The lease provides that upon its termination and at tenant's expense tenant "shall make whatever alterations are necessary so as to return Apartment 15-B to a unit separate and apart from Apartment 15-C."

In 1998, landlord filed a petition with the Division of Housing and Community Renewal (DHCR) for high income rent deregulation of apartment 15B pursuant to the Rent Regulation Reform Act of 1997, based on high rent (in excess of $2,000 per month) and high income (in excess of $175,000 in each of the two preceding calendar years). By order dated September 23, 1999, the Rent Administrator deregulated apartment 15B despite Noto's claim that she alone leased apartment 15B, her

husband separately leased apartment 15C, and the two apartments were separate and had always been treated as such.

Thereafter, on October 28, 1999, Noto filed a petition for administrative review (PAR) again claiming that the two apartments were separate and had been treated that way by her, her husband, and landlord. Before a determination was rendered on Noto's PAR, landlord offered a market rate renewal lease in accordance with the Rent Stabilization Law (Administrative Code of City of NY § 26-504.3 [e]). However, the PAR stayed the effect of the deregulation order (Rent Stabilization Code [9 NYCRR] § 2529.12), and the proffered renewal lease was therefore premature.

By order dated January 24, 2002, DHCR denied Noto's PAR. DHCR noted that the relevant inquiry in determining high income rent deregulation was not whether the apartments had separate renewal leases, were separately renewed, or had their rent paid separately, but rather "the degree of physical integration between the apartments and the nature of their usage." Upon review of the record, which included a physical inspection of the combined space, the Commissioner concluded that "the two apartments were physically integrated and were utilized as one integrated family housing unit." Therefore, the Commissioner denied the PAR and affirmed the order of the Rent Administrator.

Noto then commenced a proceeding pursuant to CPLR article 78 to annul DHCR's determination denying the PAR. The Supreme Court denied the petition and granted landlord's cross motion to dismiss on the ground that the agency determination was rational. Noto did not appeal from this order.

Thereafter, landlord commenced, in Housing Court, separate holdover proceedings against Noto and Wachtel to obtain possession of each "separate" apartment and of the combined space. Realizing that the proceedings were premature in the absence of an offer of a market value renewal lease, landlord sought leave to discontinue them, without prejudice. However, as relevant to this appeal, tenants refused to consent to discontinue without prejudice the proceeding which sought to recover possession of 15C. Instead, they affirmatively cross-moved for summary judgment insisting on a dismissal with prejudice. Tenants argued that only 15B had been deregulated, and, consequently, 15C was still subject to rent stabilization. In denying tenants' cross motion for summary judgment for dismissal with prejudice on the merits, the Housing Court observed that although the DHCR order did not specifically refer to 15C "this is only because Apt. 15C no longer exists." The court

specifically recognized that landlord had a potential claim against tenants, but it was not ripe for adjudication. Therefore, the court dismissed the proceeding, as well as the others, without prejudice to landlord. Tenants did not appeal from this order.

By letter dated March 16, 2004, landlord offered tenants a market rent renewal lease for the combined space. Instead of accepting or rejecting this lease within the requisite time period, tenant Noto commenced the instant action seeking a declaration that 15C is subject to rent stabilization and an order directing landlord to cooperate with her efforts to restore the wall. At the same time, Noto also sought a preliminary injunction, pending the hearing of the motion, tolling her time to accept landlord's lease renewal offer. Landlord opposed the injunction and cross-moved to dismiss the first cause of action on the ground that the issue—whether 15C must first be deregulated before a market lease for the combined space could be offered—had been previously adjudicated. Landlord further argued that the second cause of action should also be dismissed because tenant's efforts to restore the wall were not in compliance with her obligation under the terms of the lease.

Although the Supreme Court specifically found that "[o]n these papers, Ms. Noto has not made the requisite showing of entitlement to injunctive relief," the court nevertheless referred the matter to a hearing before a special referee. As relevant to this appeal, the court also held that neither res judicata nor collateral estoppel barred tenant's declaratory judgment cause of action, and otherwise denied landlord's cross motion to dismiss the complaint. Specifically, the court concluded that "[a]ll that was truly at stake in the Housing Court proceedings was what type of dismissal of the eviction proceedings would be rendered" and therefore tenant "had absolutely no incentive to fully and vigorously contest the issue of whether apartment 15C was deregulated." Furthermore, because eviction proceedings were dismissed, tenant had no incentive to appeal a determination which was not adverse to her.

On appeal, landlord argues that tenant's declaratory judgment action is barred by collateral estoppel, not res judicata, and that the second cause of action to compel cooperation with the restoration of the wall fails to state a cause of action. In the event the complaint is sustained, landlord argues alternatively that the motion court, upon determination that Noto failed to meet her burden on the papers, should have denied tenant's request for injunctive relief outright, instead of referring the matter for a hearing.

We reverse and grant landlord's motion to dismiss the complaint in its entirely.

We disagree with tenant's contention that she did not have a full and fair opportunity to litigate the issue before the Housing Court or that the decision was not adverse to her. Tenant did not simply consent to landlord's motion for leave to discontinue the proceeding relating to 15C. Instead, tenant affirmatively moved to dismiss that proceeding on the merits with prejudice to landlord. In doing so, tenant took the opportunity in Housing Court to yet again fully present her position on the merits that apartment 15C had not been deregulated.* Further, to the extent Housing Court denied tenant's motion to dismiss landlord's proceeding relating to 15C with prejudice, she was adversely affected. Thus, we find that tenant is barred by the doctrine of collateral estoppel from arguing the same issue in this action (see Ryan v New York Tel. Co., 62 NY2d 494, 500-501 [1984]).

In any event, even if tenant were not barred by collateral estoppel, we would nevertheless find that apartment 15C has been deregulated. Once DHCR deregulated apartment 15B, a finding which has long since ceased being subject to challenge, there were no longer two separate apartments, and, as ultimately and properly found by the Housing Court, apartment 15C no longer existed. Furthermore, in order to constitute two separate apartments, each apartment is required to have a lawful kitchen (Administrative Code § 27-2004 [a] [14]). Given the fact that tenant's family was living in a single integrated deregulated space, landlord was required, as it did, to offer a one-time market rate renewal lease before commencing eviction proceedings (Administrative Code § 26-504.3 [e]).

Moreover, we observe that the original Rent Regulation Reform Act of 1993 was an "attempt to restore some rationality" to a system which "provides the bulk of its benefits to high income tenants" (Mem of Sen. Kemp Hannon, 1993 NY Legis Ann, at 175). The Act recognizes that "[t]here is no reason why public and private resources should be expended to subsidize rents for these households" (id.). To that end, these rent laws specifically provide for deregulation of high-rent accommodations upon vacancy or when occupied by high-income tenants (see Administrative Code §§ 26-504.1, 26-504.2, 26-504.3). Clearly, these laws were not intended to protect a high-income tenant who insists on rent stabilization for an extremely spacious multi-room apartment in the desirable Upper West Side.

---

* We reject tenant's contention that landlord has previously taken a contrary position that apartment 15C has not been deregulated.

Tenant's second cause of action should also be dismissed as she has not alleged compliance in accordance with the terms of the lease.

Finally, in light of our determination, we need not reach landlord's alternate contention that the Supreme Court erred by not denying outright tenant's motion for a preliminary injunction. However, we nevertheless take this opportunity to observe that where, as here, a court has found that a movant has not made the requisite showing for injunctive relief based on the papers, the motion must be denied. It is only when a movant meets his or her burden in the first instance and the opposing party raises an issue of fact that the court "shall make a determination by hearing or otherwise" (CPLR 6312 [c]). Concur—Marlow, J.P., Ellerin, Nardelli and Sweeny, JJ.